LINDY W. HAMILTON (8402)
ROBERT W. GIBBONS (13221)
**GRIDLEY WARD & HAMILTON**
Attorneys for Plaintiffs
635 25th Street
Ogden, Utah 84401
Telephone:  (801) 621-3317
efiling@gwhlaw.net

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF UTAH
## SUMMIT DIVISION

| | |
|---|---|
| EARL PARKER, Individually and on Behalf of All Others Similarly Situated, ) ) | |
| ) | Case No.  2:20-cv-00377-JNP |
| Plaintiffs, ) | |
| ) | COMPLAINT |
| vs. ) | |
| ) | Class Action |
| ARCH INSURANCE COMPANY, and ) | |
| OUT OF TOWNE, LLC, d/b/a RED SKY ) | |
| TRAVEL INSURANCE. ) | |
| ) | DEMAND FOR JURY TRIAL |
| Defendants ) | |

## <u>CLASS ACTION COMPLAINT</u>

Comes now, Earl Parker, individually, and on behalf of all others similarly situated ("Plaintiffs"), by and through the undersigned counsel, and files this Class Action Complaint against ARCH INSURANCE COMPANY and OUT OF TOWNE, LLC, d/b/a RED SKY TRAVEL INSURANCE (collectively "Defendants") and alleges as follows:

### INTRODUCTION

1.      This is a class action for breach of an insurance contract.  Plaintiffs purchased optional insurance from Defendants to protect against the risk of not being able to use purchased ski passes ("Ski Passes").

2.      Defendants breached the insurance contract by refusing to reimburse or refund Plaintiffs for the loss of use of Ski Passes.

1

3.      The insurance policies, which are materially the same for all members of the proposed class, expressly provide coverage for Plaintiffs who were not able to use the Ski Passes due to a covered peril, and represents to refund Plaintiffs for the cost of their Ski Pass minus the applicable daily rate or pro-rata reduction for each day that Plaintiff used their Ski Pass during the 2019/2020 ski season.

4.      Defendants are in material breach of the insurance policy by failing to refund Plaintiffs who were unable to use their Ski Passes for reasons related to the COVID-19 pandemic.

5.      Defendants have caused material harm to Plaintiffs by improperly failing to make payment.

6.      Plaintiff brings this action on behalf of himself and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b).  Plaintiffs seek to recover compensatory damages as well as declaratory relief.

## PARTIES

7.      Plaintiff Earl Parker is a resident of Park City, Utah located in Summit County.

8.      Defendant Arch Insurance Company (d/b/a Arch Insurance Solutions) ("Arch") is a Missouri corporation.  As listed in the Sky Pass Preserver policy, its principal place of business is 300 Plaza Three Jersey City, New Jersey, 07311.

9.      Defendant Red Sky Travel Insurance ("Red Sky") is an Idaho corporation.  Its principal place of business is 6 Juniper Trail, Kitty Hawk, NC 27949 or PO Box 750, Kitty Hawk, NC 27949.  Red Sky is an assumed business name for Out of Towne, LLC ("Out of Towne"), a Virginia corporation with its principal place of business listed as PO Box 750, Kitty Hawk, NC 27949.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2), because this is a class action in which at least one member of the class is a citizen of a state different from Defendants, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

11.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within Utah such that Defendants have significant, continuous, and pervasive contacts with the State of Utah.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct substantial business in this District and a substantial part of the events giving rise to Plaintiffs' claims took place within this District.

## FACTUAL BACKGROUND

### Introduction

13.     Defendants provide season ski pass insurance coverage whereby it promises its insureds coverage against loss of use of their ski passes.

14.     Upon information and belief, Defendants provide this insurance service to customers of Alterra Mountain Company ("Alterra").  Alterra sells "Ikon Passes" promising access to skiing and snowboarding at resorts it owns and operates as well as to iconic "partnership resorts", such as Aspen, which are independently owned and operated.  Consumers can purchase annual, weekly, or daily Ikon Passes in advance.

15.     To induce customers to purchase these passes in advance, and to mitigate the risk that consumers may be unable to realize the full use of their Ikon Pass for reasons beyond their control, pass insurance was offered to purchasers of Ikon Passes through Defendants.  Upon

information and belief, thousands of customers purchased optional pass insurance through Defendants.

**Plaintiff Purchased Ski Pass Insurance**

16.    Class Plaintiff Earl Parker purchased an Ikon Pass and optional Ikon Pass insurance through Defendants.  Specifically, Plaintiff signed up for a season pass with the understanding that he would be able to access the resorts from October 2019 through the end of the ski season.  To ensure he would be able to get a refund if he was unable to use the pass for reasons outside his control, Mr. Parker opted to pay an additional fee for pass insurance.

17.    On March 14, 2020, Alterra announced it was suspending operations and closing its mountain resorts in response to the COVID-19 pandemic beginning on March 15, 2020 until "further notice." See the March 14, 2020, "Alterra Mountain Company Closure Announcement."[1]

18.    The Governor of Colorado, the Governor of Utah, and the President of the United States (among others) all issued various orders, limiting human contact and restricting travel and activities to only those considered essential.  Skiing and snowboarding are considered non-essential activities.

19.    As a result of the closures and quarantine related restrictions, Plaintiff was restricted from entering upon and using the facilities of any of the resort properties he would have otherwise been allowed to visit pursuant to his Ski Pass.

20.    As set forth in the Policy, Plaintiff is entitled to receive payment from Defendants for the pro-rated cost of his Ikon Pass.

---

[1] https://www.alterramtnco.com/news/2020/03/14/alterra-mountain-companyclosure-announcement

21.    In order to adhere to Plaintiff's own obligations under the Policy, Plaintiff timely submitted an insurance claim (Claim # TVLC75105820) to Defendant Red Sky.

22.    Nevertheless, Defendant Red Sky denied the claim stating in part, "[your] policy does not cover every circumstance."  *See* **Exhibit A**.

23.    Plaintiff and other purchasers of Defendants' pass insurance are entitled to coverage as a result of their restriction from resorts due to the COVID-19 pandemic, but Defendants have failed to make payment without just cause or excuse.

### The Class Policy

24.     Plaintiffs purchased insurance from Defendants to protect against the risk of not being able to use the Ski Passes.  A true and accurate copy of the "Ski Pass Preserver" policy ("Policy") is attached hereto as **Exhibit B** and is incorporated herein by reference.

25.    The Policy identifies Defendants as the insurers of the Policy.  Defendants are the liable insurers under the Policy.

26.    The terms of the Master Policy were not subject to individual negotiation, and upon information and belief are materially the same for all policy owners ("Class Policy").

27.    Class Plaintiffs are each owners of a Class Policy, which was in force at the time of the alleged loss.

### Terms of the Policy

28.    The Policy begins explaining that, "We will pay the benefit providing the largest amount of coverage."

29.    The Policy goes on to explain that the Policy provides coverage for "Season Pass Interruption":

> **SEASON PASS INTERRUPTION**
> We will reimburse You, up to the Maximum Benefit Amount shown in the Schedule of Benefits, for the pro-rated cost of the remaining portion of the

Covered Season Pass purchased, less any refunds received, which You purchased for the Season Pass Coverage Period, when You cancel the Season Pass for one of the following Unforeseen reasons:

1. Your or a Family Member's death, which occurs during the Season Pass Period;
2. Your or a Family Member's, covered Sickness or Injury which: a) occurs during the Season Pass Coverage Period, b) requires Medical Treatment at the time of interruption; and c) as certified by a Physician, results in medical restrictions so disabling as to prevent Your continued use of the Season Pass; or
3. for Other Covered Events;

provided that any such covered Unforeseen reason occurs while coverage is in effect for You.

Reimbursement will be calculated based on the first day of the Season Pass Coverage Period, regardless of the actual date the Season Pass was purchased.

30.     The Policy defines "Unforeseen" as follows:

"**Unforeseen**" means not anticipated or expected and occurring after Your purchase of the Season Pass Cancellation and the Season Pass Interruption coverage.

31.     The Policy defines "Maximum Benefit Amount" as follows:

"**Maximum Benefit Amount**" means the maximum amount payable for coverage provided to You as shown in the Schedule of Benefits.

32.     The Policy defines the "Season Pass" or "Covered Season Pass" as follows:

"**Season Pass**" or "**Covered Season Pass**" means Your Trails access pass to Ski for multiple days which you have purchased, and for which Season Pass Cancellation coverage or Season Pass Interruption coverage has been elected and premium paid.

33.     The Policy defines "Season Pass Coverage Period" as follows:

"**Season Pass Coverage Period**" means the period of time for which Season Pass Cancellation or Season Pass Interruption coverage is elected and the premium paid and for which a Season Pass has been purchased.

34.     The Policy states "Other Covered Events" means, in part:

a. You being hijacked, **<u>quarantined</u>**, required to serve on a jury (notice of jury duty must be received after Your Effective Date), served with a court order to appear as a witness in a legal action in which You are not a party (except law enforcement officers)…(emphasis added)

35.     The Policy does contain a definition section, but the Policy fails to define "quarantined."   A quarantine is generally defined as "to isolate from normal relations or communication,"[2] and "a restriction on the movement of people and goods which is intended to prevent the spread of disease or pests.  It is often used in connection to disease and illness, preventing the movement of those who may have been exposed to a communicable disease, but do not have a confirmed medical diagnosis."[3]

36.     While the Policy contains an exclusion section, the Policy contains no applicable exclusion for viruses, pandemics, or related government orders or actions taken by the resorts, independently or pursuant to such government orders.

## CLASS ACTION ALLEGATIONS

37.     Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of himself and all others similarly situated, and seeks to represent the following class:

38.     All persons who purchased a Ski Pass for the 2019/2020 ski season and purchased optional insurance from Defendants on their Ski Pass but were denied coverage for the loss of use of their passes after the resorts closed on March 15, 2020 due to no fault of their own.

39.     Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, any of the officers, directors, or employees of the Defendants, the legal representatives, heirs, successors, and assigns of the Defendants, anyone employed with Plaintiffs' counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

---

[2] https://www.merriam-webster.com/dictionary/quarantine
[3] https://en.wikipedia.org/wiki/Quarantine

40.     Plaintiffs' claims satisfy the numerosity, typicality, adequacy, commonality and superiority requirements under Federal Rule of Civil Procedure 23, as set forth more fully herein.

41.     The persons who fall within the class number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied.  Because class members are geographically dispersed across the country, joinder of all class members in a single action is impracticable.

42.     Class members are readily ascertainable from information and records in Defendants' possession, custody, or control.  Notice of this action can readily be provided to the class.

43.     There are questions of law and fact common to the claims of Plaintiff and the class that predominate over any questions affecting only individual class members.  The questions of law and fact arising from Defendants' actions that are common to the class include, without limitation:

a. Whether the orders and directives from Alterra and other resorts suspending operations and closing resorts, and excluding Ikon Pass holders from those resorts, constituted a covered event, as a "quarantine," under the terms of the Policies;

b. Whether orders and directives from the many governmental and health authorities throughout the United States, which restrained travel and excluded participation in certain activities due to the presence of COVID-19, constituted a covered event, as a "quarantine," under the terms of the Policies;

c. Whether Defendants breached the terms of its Policies with Class members;

d. Whether the Class sustained damages as a result of Defendants' breaches of contract;

e. Whether the Class is entitled to damages, restitution, and/or other equitable relief; and

f. Whether the Class, or a subset of the Class, is entitled to declaratory relief stating the proper construction and/or interpretation of Defendants' Policies.

44.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

45.    Plaintiff's claims are typical of the claims of the class in that Plaintiff and the class members all purchased Ski Pass insurance policies containing the same or similar terms including, in particular, what constitutes a Covered Event.

46.    Plaintiff will fairly and adequately protect and represent the interests of the proposed class, because his interests are aligned with, and not antagonistic to, those of the proposed class, and he is represented by counsel who are experienced and competent in the prosecution of class action litigation, and have particular expertise with class action litigation on behalf of purchasers of insurance policies.

47.    Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy.  It would be impracticable and undesirable for each member of the class to bring a separate action.  Because of the relatively small size of individual class members' claims, absent a class action, most class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## CAUSES OF ACTION

### Count I: Breach of Contract

48.    The preceding paragraphs 1 – 47 are incorporated by reference herein.

49.     Plaintiff and the proposed class members purchased Ski Pass insurance from Defendants.

50.     The Class Policies are valid and enforceable contracts between the Defendants and Plaintiff and proposed class members.

51.     Plaintiff and the proposed class members substantially performed their obligations pursuant to the terms of the Class Policies.

52.     Plaintiff and the proposed class members suffered a season pass interruption after a covered event as they are defined under the Class Policies.

53.      Defendants failed to compensate Plaintiff and proposed class members for their respective losses as required by the Class Policies.

54.     As a direct and proximate result of Defendants' breaches, Plaintiff and the proposed class members have sustained damages that are continuing in nature in an amount to be determined at trial.

## Count II: Declaratory Relief

55.     The preceding paragraphs 1 – 54 are incorporated by reference herein.

56.     An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendants, on the other, concerning the respective rights and duties of the parties under the Class Policies.

57.     Plaintiff and the proposed class members contend that Defendants have breached the Class Policies by failing to timely pay Class Members for their respective losses.  Defendants have failed to reimburse each member of the class for the Ski Pass cost minus the applicable pro-rata reduction for each day (or portion thereof) that the member has used his/her Ski Pass during the Ski/Snowboard season.

58.     Plaintiffs, therefore, seek a declaration of the parties' respective rights and duties under the Class Policies and request the Court to declare the aforementioned conduct of Defendants unlawful and in material breach of the Class Policies so that future controversies may be avoided.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests relief and judgment against Defendants as follows:

(a)    That the Court enter an order certifying the class, appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

(b)    For a judgment against Defendants for the causes of action alleged against them;

(c)    For compensatory damages in an amount to be proven at trial;

(d)    For a declaration that Defendants' conduct as alleged herein is unlawful and in material breach of the Class Policies;

(e)    For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(f)    For Plaintiffs' attorney's fees;

(g)    For Plaintiffs' costs incurred; and

(h)     For such other relief in law or equity as the Court deems just and proper.


DATED this  16th  day of June, 2020.


                              /s/  *Robert W. Gibbons* (13221)
                              ROBERT W. GIBBONS
                              Attorney for Plaintiffs

# EXHIBIT A



Red Sky Claims
Executive Plaza IV
11350 McCormick Rd Suite 102
Hunt Valley, MD 21031
1-866-889-7409

Claim # TVLC75105820

Dear Earl Parker,

We have received and reviewed your Season Pass Cancellation claim of your trip for travel dates December 1, 2019 through May 25, 2020. We have determined that we are unable to approve your claim or to provide any benefits under your claim.

According to your claim form, you cancelled your trip due to the fear of exposure to the Coronavirus. The Trip Cancellation benefit affords coverage due to an illness that requires medical treatment at the time of cancellation which must be certified by a physician resulting is medical restrictions that disable you from travel. Your policy does not cover every circumstance. The threat of exposure or of contracting the virus unfortunately is not a covered event under the policy therefore, we are unable to honor your claim. We direct your attention to the policy provision listed below.

TRIP CANCELLATION
We will reimburse You, up to the Maximum Benefit Amount shown in the Schedule of Benefits, for the amount of the unused non-refundable prepaid Payments or Deposits for the Travel Arrangements You purchased for Your Trip, when You cancel Your Trip prior to departure for a covered Unforeseen reason.
Trip Cancellation must be due to one of the following Unforeseen reasons:
1. Your, a Family Member's, or a Traveling Companion's, or a Business Partner's death or a Traveling Companion's Family Member's, that occurs before departure on Your Trip; or
2. Your, a Family Member's, or a Traveling Companion's or a Business Partner's or a Traveling Companion's Family Member's covered Sickness or Injury, that: a) occurs before departure on Your Trip; b) requires Medical Treatment at the time of cancellation; and c) as certified by a Physician, results in medical restrictions so disabling as to cause Your Trip to be cancelled; or
3. for Other Covered Events, as defined

Although we understand and empathize with you regarding your desire, the need to cancel your trip, we must adhere to the terms of the policy provisions stated above.

Travel insurance is generally misunderstood to insure every circumstance. It does not. It only insures the perils listed in the policy, subject to the terms, conditions and exclusions. While we certainly understand your disappointment at the full denial of this claim, please understand that we must consider each claim and the applicable facts under the terms and conditions of the policy purchased. In closing, it is our position that the benefits issued were calculated correctly. If you have any additional information that you feel would affect our determination, please email it to the following address for review: appeals@archinsurance.com

Sincerely,
Claims Department



# Explanation of Benefits

Red Sky Claims are administered by Arch Insurance Company



Red Sky Claims
Executive Plaza IV
11350 McCormick Rd Suite 102
Hunt Valley, MD 21031

| | |
|---|---|
| Member: | Earl Parker |
| Member ID No: | TVL2142091219 |
| Claim Number: | TVLC75105820 |
| Payment Date: | 5/8/2020 |
| Payment #: | 970226 |

Earl Parker
2070 Bear Hollow Dr
Park City, UT 84098
United States

Benefit:     Season Pass Cancellation

| Service | Start Date | End Date | Amount Claimed | Other Insurance | Amount Ineligible | Reason Code | Deductible | Amount Approved |
|---|---|---|---|---|---|---|---|---|
| Ski Lift Tickets | 12/01/2019 | 05/25/2020 | $619.00 | $0.00 | $619.00 | | $0.00 | $0.00 |
| | | Totals | $619.00 | $0.00 | $619.00 | | $0.00 | $0.00 |

| Check Amount | Payee | | |
|---|---|---|---|
| $0.00 | Earl Parker | Amount Claimed: | $619.00 |
| | | Amount Paid to Provider: | $0.00 |
| | | Amount Paid to Member: | $0.00 |
| | | Amount Paid to Beneficiary: | $0.00 |
| | | Member Responsibility: | $619.00 |

*Appeals@ Arch insurance solutions.com*

# EXHIBIT B




**SKI PASS PRESERVER**

**Underwritten By:**
**Arch Insurance Company**
Administrative Office: 300 Plaza Three
Jersey City, NJ 07311

**Administered By:**
**Red Sky Travel Insurance**
c/o Arch Insurance Company
Executive Plaza IV
11350 McCormick Rd., Suite 102
Hunt Valley, MD 21031
Phone: 1-866-889-7409
Fax: 1-443-279-2901
Email: redsky@archinsurance.com
Office Hours: Monday-Friday, 8:30am – 5pm EST

**INDIVIDUAL TRAVEL PROTECTION POLICY**

This policy describes the travel insurance benefits underwritten by Arch Insurance Company, herein referred to as the "Company" or as "We", "Us" and "Our". Please refer to the Schedule of Benefits shown on the Schedule of Benefits, which provides the Insured, also referred to as "You" or "Your", with specific information about the program You purchased.

If You are not satisfied for any reason, You may return Your policy to Us within 14 days after receipt. Your premium will be refunded, provided You have not already departed on the Trip or filed a claim. When so returned, all coverages under the policy are void from the beginning.

**TABLE OF CONTENTS**

**SCHEDULE OF BENEFITS**
**SECTION I - COVERAGES**
**SECTION II - DEFINITIONS**
**SECTION III - POLICY LIMITATIONS AND EXCLUSIONS**
**SECTION IV - COVERAGE PROVISIONS**
**SECTION V - CLAIMS PROVISIONS**
**SECTION VI - GENERAL PROVISIONS**

IN WITNESS WHEREOF, The **Company** has caused this policy to be executed and attested.

_____          _____

John Mentz                                                                        Patrick Nails
President                                                                            Secretary

05 LTP0041 00 06 13                                                                                          Page 1 of 7

## SCHEDULE OF BENEFITS

**Benefits**                                                                    **Maximum Benefit Amount**

Season Pass Cancellation ................................................................................................ Season Pass Cost
Season Pass Interruption ................................................................................... Pro-rated Season Pass Cost

## SECTION I – COVERAGES

No benefit will duplicate any other benefit or coverage provided under this policy. Should there be a duplication of coverage or benefits, then We will pay the benefit providing the largest amount of coverage.

**SEASON PASS CANCELLATION**
We will reimburse You, up to the Maximum Benefit Amount shown in the Schedule of Benefits, for the cost of the Covered Season Pass, less any refunds received, which You purchased for the Season Pass Coverage Period, when You cancel the Season Pass prior to the start of the Season Pass Coverage Period for one of the following Unforeseen reasons:

1. Your or a Family Member's death, that occurs before the Season Pass Coverage Period;
2. Your or a Family Member's, covered Sickness or Injury, that: a) occurs before the Season Pass Coverage Period; b) requires Medical Treatment at the time of cancellation; and c) as certified by a Physician, results in medical restrictions so disabling as to cause the Season Pass to be cancelled; or
3. for Other Covered Events;

provided that any such covered Unforeseen reason occur while coverage is in effect for You.

**SEASON PASS INTERRUPTION**
We will reimburse You, up to the Maximum Benefit Amount shown in the Schedule of Benefits, for the pro-rated cost of the remaining portion of the Covered Season Pass purchased, less any refunds received, which You purchased for the Season Pass Coverage Period, when You cancel the Season Pass for one of the following Unforeseen reasons:

1. Your or a Family Member's death, which occurs during the Season Pass Period;
2. Your or a Family Member's, covered Sickness or Injury which: a) occurs during the Season Pass Coverage Period, b) requires Medical Treatment at the time of interruption; and c) as certified by a Physician, results in medical restrictions so disabling as to prevent Your continued use of the Season Pass; or
3. for Other Covered Events;

provided that any such covered Unforeseen reason occurs while coverage is in effect for You.

Reimbursement will be calculated based on the first day of the Season Pass Coverage Period, regardless of the actual date the Season Pass was purchased.

**SPECIAL CONDITIONS:**  You must advise the Travel Supplier and Red Sky Travel Insurance as soon as possible in the event of a claim. We will not pay benefits for any additional charges incurred that would not have been charged had You notified the Travel Supplier and Red Sky Travel Insurance as soon as reasonably possible.

In no event shall the amount reimbursed for Season Pass Cancellation and Season Pass Interruption exceed the lesser of the amount You prepaid for the Season Pass or the Maximum Benefit Amount shown in the Schedule of Benefits.

 **"Other Covered Events"** means:

a. You being hijacked, quarantined, required to serve on a jury (notice of jury duty must be received after Your Effective Date), served with a court order to appear as a witness in a legal action in which You are not a party (except law enforcement officers);
b. Your primary place of residence or destination is made Uninhabitable and remains Uninhabitable during the Season Pass Coverage Period, by fire, flood, or other Natural Disaster, vandalism, or burglary of Your principal place of residence;
c. Your transfer of employment of 100 miles or more by the employer with whom You or Your are employed on Your Effective Date  which requires Your principal residence to be relocated;
d. You who are military, police or fire personnel being called into emergency service to provide aid or relief;
e. Your involuntary employment termination or layoff which occurs 30 days or more after Your Effective Date. Employment must have been with the same employer for at least 1 continuous year;
f. revocation of Your previously granted military leave or re-assignment. Official written notice of the revocation or re-assignment by a supervisor or commanding officer of the appropriate branch of service will be required;
g. Your pregnancy, provided the pregnancy occurs after Your Effective Date for Season Pass Cancellation, as verified by medical records; and
h. You are attending the childbirth of Your Family Member, provided the pregnancy occurs after Your Effective Date for Season Pass Cancellation, as verified by medical records.

## SECTION II – DEFINITIONS

**"Accident"** means a sudden, unexpected, unusual, specific event that occurs at an identifiable time and place, and shall also include exposure resulting from a mishap Skiing.

**"Bankruptcy or Default"** means the total cessation of operations due to financial insolvency, with or without the filing of a bankruptcy.

**"Caregiver"** means an individual employed for the purpose of providing assistance with activities of daily living to You or to Your Family Member who has a physical or mental impairment. The Caregiver must be employed by You or Your Family Member. A Caregiver is not a babysitter; childcare service, facility or provider; or a person employed by any service, provider or facility to supply assisted living or skilled nursing personnel.

**"Child Caregiver"** means an individual providing basic childcare service needs for Your minor children under the age of 18 while You are Skiing with a Covered Season Pass without the minor children. The arrangement of being the Child Caregiver while You are Skiing with a Covered Season Pass must be made 30 or more days prior to the Season Pass Coverage Period.

**"Domestic Partner"** means an opposite or same-sex partner who is at least eighteen (18) years of age and has met all the following requirements for at least 6 months:

1) Resides with You;

2) Shares financial assets and obligations with You;

3) Is not related by blood to You to a degree of closeness that would prohibit a legal marriage;

4) Neither You nor Your Domestic Partner is married to anyone else, or has any other Domestic Partner.

**"Effective Date"** means the date and time Your coverage begins, as indicated in Section IV - Coverage Provisions, When Coverage Begins and Ends.

**"Family Member"** means any of the following: Your legal spouse (or common-law spouse where legal), legal guardian or ward, son or daughter (adopted, foster, step or in-law), brother or sister (includes step or in-law), parent (includes step or in-law), grandparent (includes in-law), grandchild, aunt, uncle, niece or nephew, Domestic Partner, Caregiver, or Child Caregiver.

**"Hospitalized"** means admitted to a hospital for a period of at least 24 hours or where the patient is charged by the hospital for a minimum of one day of inpatient charges.

**"Injury"** means bodily harm caused by an Accident that: 1) occurs while Your coverage is in effect under the policy and 2) requires examination and treatment by a Physician. The Injury must be the direct cause of loss and must be independent of all other causes and must not be caused by, or result from, Sickness.

**"Insured"** means the person named on the Schedule of Benefits or Confirmation of Benefits that: is scheduled to Ski during the Season Pass Coverage Period, provided the required premium has been paid. Insured also means "You" and "Your".

**"Maximum Benefit Amount"** means the maximum amount payable for coverage provided to You as shown in the Schedule of Benefits.

**"Medical Treatment"** means examination and treatment by a Physician.

**"Natural Disaster"** means earthquake, flood, fire, hurricane, blizzard, avalanche, tornado, tsunami, volcanic eruption, or landslide that is due to natural causes.

**"Physician"** means a person licensed as a medical doctor in the jurisdiction where the services are rendered or a Christian Science Practitioner who is: (a) other than You or a Family Member; and (b) practicing within the scope of his or her license.

**"Pre-Existing Condition"** means an illness, disease, or other condition during the 60 day period immediately prior to the Effective Date of Your coverage for which You or Family Member: 1) received or received a recommendation for a test, examination, or medical treatment; or 2) took or received a prescription for drugs or medicine. Item (2) of this definition does not apply to a condition which is treated or controlled solely through the taking of prescription drugs or medicine and remains

treated or controlled without any adjustment or change in the required prescription throughout the 60 day period before Your coverage is effective under this policy.

**"Season Pass" or "Covered Season Pass"** means Your Trails access pass to Ski for multiple days which you have purchased, and for which Season Pass Cancellation coverage or Season Pass Interruption coverage has been elected and premium paid.

**"Season Pass Coverage Period"** means the period of time for which Season Pass Cancellation or Season Pass Interruption coverage is elected and the premium paid and for which a Season Pass has been purchased.

**"Sickness"** means an illness or disease of the body that: 1) requires examination and treatment by a Physician, and 2) commences while Your coverage is in effect. An illness or disease of the body that first manifests itself and then worsens or becomes acute prior to the Effective Date of Your coverage is not a Sickness as defined herein and is not covered by the policy.

**"Ski" or "Skiing"** means winter recreation of snow skiing or snowboarding on Trails which are only accessed by a prepaid use ticket for lifts and/or use or admission, but does not include cross country skiing, back country skiing, heli-skiing, extreme skiing, snowcat skiing, ski-jumping, off-piste skiing, tubing, luging, half-pipes, terrain parks, or other snow play activities either on or off Trails.

**"Trails"** means named skier paths designated for downhill travel as shown on a ski resort trail map using the international difficulty rating, not including connecting paths or cross-overs between downhill trails, trails that are outside the established marked and patrolled boundaries of a ski resort, or areas designated as unsafe or closed by ski resort management for avalanche control work.

**"Travel Supplier"** means any entity or organization that coordinates or supplies the Season Pass for You.

**"Unforeseen"** means not anticipated or expected and occurring after Your purchase of the **Season Pass Cancellation** and the **Season Pass Interruption** coverage.

**"Uninhabitable"** means: (1) the building structure itself is unstable and there is a risk of collapse in whole or in part; (2) there is exterior or structural damage allowing elemental intrusion, such as rain, wind, hail or flood; (3) immediate safety hazards have yet to be cleared; or (4) the property is without electricity, gas, sewer service or water or under an order of mandatory evacuation by local government authorities.

## SECTION III - POLICY LIMITATIONS AND EXCLUSIONS

**Benefits are not payable for any loss due to, arising or resulting from:**

1. due to a Pre-Existing Condition;
2. suicide, attempted suicide or any intentionally self-inflicted injury of You, or Family Member;
3. war, invasion, acts of foreign enemies, hostilities between nations (whether declared or undeclared), or civil war;
4. participating as a professional in a stunt, athletic or sporting event or competition;
5. normal pregnancy (except complications of pregnancy) and/or resulting childbirth, except as otherwise covered under Cancellation or Interruption, or voluntarily induced abortion;
6. any non-emergent treatment or surgery, or any Elective Treatment and Procedures;
7. a mental, or nervous or psychological disorder unless Hospitalized for that condition while the policy is in effect for You; or
8. Bankruptcy or Default or failure to supply services by a Travel Supplier.

## SECTION IV - COVERAGE PROVISIONS

**Who Is Eligible For Coverage**
A person who has purchased the Covered Season Pass during the Season Pass Coverage Period.

**When Coverage Begins and Ends**

**When Coverage Begins:**

**Season Pass Cancellation** Coverage begins when the coverage is elected and the required premium for the Season Pass Coverage Period is received by the Travel Supplier or Arch Insurance Company.

This is Your "Effective Date" and time for **Season Pass Cancellation**.

**Season Pass Interruption:** Coverage begins at the start of the Season Pass Coverage Period. This is Your "Effective Date" and time for **Season Pass Interruption**.

**When Coverage Ends:**

**Season Pass Cancellation:** Your coverage automatically ends on the earlier of 1) the start of the Season Pass Coverage Period; or 2) the date and time You cancel the Season Pass prior to the start of the Season Pass Coverage Period.

**Season Pass Interruption:** Your coverage automatically ends on the earlier of 1) the end of the Season Pass Coverage Period; or 2) the date and time You cancel the Season Pass.

Termination of **Season Pass Cancellation** and **Season Pass Interruption** coverage will not affect a claim for loss that occurs after premium has been paid.

**SECTION V - CLAIMS PROVISIONS**

**Your duties in event of a loss:**

Immediately, or as soon as possible, call Your Travel Supplier and Red Sky Travel Insurance (see Where to Report a Claim) to report Your cancellation or interruption to avoid non-covered charges due to late reporting.

If You are prevented from using the Covered Season Pass as scheduled or must interrupt the Season Pass Coverage Period due to Sickness or Injury, You should obtain medical care immediately. We require a certification by the treating Physician at the time of Sickness or Injury that medically imposed restrictions prevented Your use or continued use of the Covered Season Pass.

**Where to Report a Claim:**

Phone: 866-889-7409
Email: redsky@archinsurance.com
Mail: Red Sky Travel Insurance c/o Arch Insurance Company
Executive Plaza IV
11350 McCormick Rd., Suite 102
Hunt Valley, MD 21031

**Notice of Claim**:  Notice of claim must be reported to Us within 30 days after a loss occurs or as soon as is reasonably possible.  You or someone on Your behalf may give the notice. The notice should be given to Us or Our designated representative and should include sufficient information to identify You.

**Claim Forms**:  When notice of claim is received by Us or Our designated representative, Red Sky Travel Insurance forms for filing proof of loss will be furnished.  If these forms are not sent within 15 days, the proof of loss requirements can be met by You sending Us a written statement of what happened.   This statement must be received within the time given for filing proof of loss.

Obtain claim forms from Red Sky Travel Insurance or at trippreserver.com which will provide all the details for filing Your claim appropriately. Please read the instructions carefully. The instructions will direct You toward filing all the correct, necessary documentation and following the appropriate procedures in order to have Your claim settled as quickly as possible.

**Proof of Loss**: Proof of loss must be provided within 90 days after the date of the loss or as soon as is reasonably possible.  Proof must, however, be furnished no later than 12 months from the time it is otherwise required, except in the absence of legal capacity.

**Payment of Claims**: All benefits will be paid directly to You, unless otherwise directed.  Any accrued benefits unpaid at Your death will be paid to Your estate.  If You have assigned Your benefits, we will honor the assignment if a signed copy has been filed with us.  We are not responsible for the validity of any assignment.

**SECTION VI - GENERAL PROVISIONS**

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss.  No legal action for a claim can be brought against Us more than 3 years after the time required for giving proof of loss.  This 3 year time period is extended from the date proof of loss is filed and the date the claim is denied in whole or in part.

**Concealment and Misrepresentation:** The entire coverage will be void, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or misrepresented.

**Other Insurance with Us:** You may be covered under only one travel insurance policy with Us while You are Skiing under a Covered Season Pass.  If You are covered under more than one such policy, You may select the coverage that is to remain in effect.  In the event of death, the selection will be made by Your beneficiary or estate. Premiums paid (less claims paid) will be refunded for the duplicate coverage that does not remain in effect.

**Reductions in the Amount of Insurance:**  The applicable benefit amount will be reduced by the amount of benefits, if any, previously paid for any loss or damage under this coverage while You are Skiing under a Covered Season Pass.

 

**State Exceptions for
Ski Pass Preserver Policy**

**Alabama Residents
Form #: 05 LTP0041 01 11 13**

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** The time period by which a legal action relating to this policy must be filed is governed by Alabama law.

**Arkansas Residents
Form #: 05 LTP0041 04 10 13**

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss. No legal action for a claim can be brought against Us more than 5 years after the time required for giving proof of loss. This 5 year time period is extended from the date proof of loss is filed and the date the claim is denied in whole or in part.

**California Residents**
Form #: 05 LTP0041 05 04 14

Under **Section II - Definitions**, the following definitions are deleted and replaced as follows:

"**Domestic Partner**" means an opposite or same-sex partner who is at least eighteen (18) years of age and qualifies as a Domestic Partner under state law.

"**Injury**" means bodily harm caused by an Accident that: 1) occurs while Your coverage is in effect under the policy; and 2) requires examination and treatment by a Physician. The Injury must be the proximate cause of loss and must not be caused by, or result from, Sickness.

Under **Section V - Claims Provisions**, the **Proof of Loss** provision is deleted and replaced as follows:

**Proof of Loss:** Proof of loss must be provided within 90 days after the date of the loss or as soon as is reasonably possible. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

Under **Section V – Claims Provisions**, the following will appear as the 1st paragraph in the **Payment of Claims** provision:

Benefits payable under this policy will be paid immediately upon receipt of due written proof of loss.

Under **Section V – Claims Provisions**, the following will appear as the last paragraph in the **Payment of Claims** provision:

Unless the Insured makes an irrevocable designation of beneficiary, the right to change of beneficiary is reserved to the Insured and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of this policy or to any change of beneficiary or beneficiaries, or to any other changes in this policy.

Under **Section VI – General Provisions**, the following will appear as the 1st provision:

**Entire Contract, Changes:** This policy, including the Schedule of Benefits or Confirmation of Benefits, endorsements and attached papers, if any, constitute the entire contract of insurance. No change in this policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.

Under **SECTION VI – General Provisions**, the **Concealment and Misrepresentation** provision is deleted and replaced as follows:

**Concealment and Misrepresentation**: The entire coverage will be void, if before, during or after a loss, any material fact or circumstance relating to this insurance has

been intentionally concealed or misrepresented.

**District of Columbia Residents
Form #: 05 LTP0041 09 07 13**

Under **Section II – Definitions, Domestic Partner** is deleted and replaced as follows:

"**Domestic Partner**" means an opposite or same-sex partner who is at least eighteen (18) years of age and is registered with a state or local registry. If not registered, all the following requirements for at least 6 months:
1. Resides with You;
2. Shares financial assets and obligations with You;
3. Is not related by blood to You to a degree of closeness that would prohibit a legal marriage;
4. Neither You nor Your Domestic Partner is married to anyone else, or has any other Domestic Partner.

Under **Section II – Definitions, Medically Necessary** is deleted and replaced as follows:

"**Medically Necessary**" means a service which is appropriate and consistent with the treatment of the condition in accordance with accepted standards of community practice. The fact that a Physician may prescribe, authorize, or direct a service does not of itself make it Medically Necessary or covered by the policy.

**Georgia Residents
Form #: 05 LTP0041 11 06 13**

Under **Section I – Coverages,** the following "**Other Covered Event**" is deleted and replaced as follows**:**

d. You who are military, police or fire personnel and purchased coverage at the time the Payments or Deposits were made for the Trip, are called into emergency service to provide aid or relief;

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be cancelled, if before, during or after a loss, any material fact or circumstance relating to this

insurance has been concealed or misrepresented.

**Illinois Residents**
**Form #:** 05 LTP0041 14 10 13

Under **Section II – Definitions, Ski Equipment** is deleted in its entirety:

"**Ski Equipment**" means skis, ski poles, ski bindings, ski boots, snowboards, snowboard bindings, snowboard boots, snowblades and any other recognized snow sports equipment.

Under **Section II – Definitions**, **Family Member** is deleted and replaced as follows:

"**Family Member**" means any of the following: Your or Your Traveling Companion's legal spouse (or common-law or civil union spouse where legal), legal guardian or ward, son or daughter (adopted, foster, step, in-law or civil union), brother or sister (includes step or in-law), parent (includes step or in-law), grandparent (includes in-law), grandchild, aunt, uncle, niece or nephew, Domestic Partner, Caregiver, or Child Caregiver.

Under **Section II – Definitions, Injury** is deleted and replaced as follows:

"**Injury**" means bodily harm caused by an Accident that: 1) occurs while Your coverage is in effect under the policy; and 2) requires examination and treatment by a Physician. The Injury must be the direct cause of loss and must be independent of disease or bodily infirmity.

Under **Section II – Definitions, Uninhabitable** is deleted and replaced as follows:

"**Uninhabitable**" means: (1) the building structure or any part of the building structure is unstable and there is a risk of collapse; (2) there is exterior or structural damage allowing elemental intrusion, such as rain, wind, hail or flood; (3) immediate safety hazards have yet to be cleared; or (4) the property is without electricity, gas, sewer service or water or under an order of mandatory evacuation by local government authorities.

Under **Section III, Policy Limitations and Exclusions**, the following exclusions are deleted in their entirety:

2. suicide, attempted suicide or any intentionally self-inflicted injury of You, a Traveling Companion, Family Member or Business Partner booked to travel with You, while sane or insane;
4. participating as a professional in a stunt, athletic or sporting event or competition;

Under **Section III, Policy Limitations and Exclusions,** the following exclusions are revised to appear as follows:

3. war (whether declared or undeclared), acts of foreign enemies, hostilities between nations not including a Terrorist Incident, or civil war;

Under **Section V, Claims Provisions**, the following provision is added:

**Time of Payment of Claims:** All claims and indemnities payable under the terms of a policy of accident and health insurance shall be paid within 30 days following receipt of due proof of loss. Failure to pay within such period shall entitle the insured to interest at the rate of 9 percent per annum from the 30th day after receipt of such proof of loss to the date of late payment, provided that interest amounting to less than one dollar need not be paid.

Under **Section VI, General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss. No legal action for a claim can be brought against Us more than 3 years after the time required for giving proof of loss. This 3 year time period is extended from the date proof of loss is filed and the date the whole claim or any part of the claim is denied.

Under **Section VI, General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Intentional Misrepresentation:** The entire coverage will be void, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or intentionally misrepresented.

Under **Section VI, General Provisions,** the following provisions must be added:

**Time Limit on Certain Defenses:** After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability commencing after the expiration of such two year period.

**Change of Beneficiary:** You have the right to change Your beneficiary and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of this policy or to any change of beneficiary or beneficiaries, or to any other changes in this policy.

**Civil Union:** Parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the laws of Illinois to spouses.

**Kansas Residents**
**Form #:** 05 LTP0041 17 12 13

The following disclaimer has been added to page 1 the policy:

**THIS IS A LIMITED POLICY.
PLEASE READ IT CAREFULLY
THIS POLICY DOES NOT COVER PRE-
EXISTING CONDITIONS
UNLESS THE PRE-EXISTING
CONDITIONS WAIVER IS APPLICABLE**

The "Free Look Period" shown on page 1 is deleted and replaced as follows:

**If You are not satisfied for any reason, You may return Your policy to Us within 14 days after receipt. Your premium will be refunded, provided You have not already departed on the Trip or filed a claim. When so returned, all coverages under the policy are void from the beginning.**

Under **Section II – Definitions**, the definition of **"Domestic Partner"** and any references contained in the policy are deleted in its entirety.

The following provision has been added after **Section IV – Coverage Provisions, When Coverage Ends:**

**Cancellation by Insured:** You may cancel this policy at any time by written notice delivered or mailed to Us, effective upon receipt of such notice or on such later date as may be specified in such notice. In the event of cancellation or death of the insured, We will promptly return the unearned portion of any premium paid on a short rate basis. Cancellation will be without prejudice to any claim originating prior to the effective date of the cancellation.

Under **Section V – Claims Provisions, Payment of Claims** is deleted and replaced as follows:

**Payment of Claims:** We, or Our designated representative, will pay the claim immediately upon receipt of due written acceptable proof of loss. Benefits for Loss of life will be paid to Your designated beneficiary. If a beneficiary is not otherwise designated by You, benefits for Loss of life will be paid to the first of the following surviving preference beneficiaries:

a) Your spouse;
b) Your child or children jointly;
c) Your parents jointly if both are living or the surviving parent if only one survives;
d) Your brothers and sisters jointly; or
e) Your estate.

All other benefits will be paid directly to You, unless otherwise directed. Any accrued benefits unpaid at Your death will be paid to Your estate. If You have assigned Your benefits, we will honor the assignment if a signed copy has been filed with us. We are not responsible for the validity of any assignment.

All or a portion of all benefits provided by the policy may, at Our option, be paid directly to the provider of the service(s) to You. All benefits not paid to the provider will be paid to You.

If any benefit is payable to: (a) an Insured who is a minor or otherwise not able to give a valid release; or (b) Your estate, We may pay any amount due under the policy to Your beneficiary or any relative whom We find

entitled to the payment. Any payment made in good faith shall fully discharge Us to any party to the extent of such payment.

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss. No legal action for a claim can be brought against Us more than 5 years after the time required for giving proof of loss. This 5 year time period is extended from the date proof of loss is filed and the date the claim is denied in whole or in part.

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be void, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or misrepresented. For the purposes of this provision, fraud means knowingly and with intent to defraud, You present, cause to be presented or prepare with knowledge or believe to an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy, or a claim for payment or other benefit pursuant to an insurance policy which You know to contain materially false information concerning any fact material thereto; or You conceal, for the purpose of misleading, information concerning any fact material thereto.

**Louisiana Residents**
**Form #:** 05 LTP0041 19 11 13

Under **Section II – Definitions, "Domestic Partner"** is deleted in its entirety.

Under **Section V – Claims Provisions, Proof of Loss** is deleted and replaced as follows:

**Proof of Loss:** Proof of loss must be provided within 90 days after the date of

the loss or as soon as is reasonably possible. Proof must, however, be furnished no later than 12 months from the time it is otherwise required, except in the absence of legal capacity. For losses that arise due to a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials, the time limit for submission of proof of loss is 180 days after the date of the loss.

Under **Section V – Claims Provisions, Payment of Claims** the following provision has been added:

We will pay the claim within 30 days after receipt of acceptable proof of loss.

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be void, if before, during or after a loss, any material fact or circumstance relating to this insurance has been intentionally concealed or misrepresented. Fraud or misrepresentation with the intent to deceive after coverage is in force is grounds for cancellation and grounds to deny coverage for benefits related to such fraud, concealment or misrepresentation. Coverage for other benefits will continue until the cancellation is effective.

**Maine Residents**
**Form #:** 05 LTP0041 20 11 13
The "Free Look Period" shown on page 1 is deleted and replaced as follows:

If You are not satisfied for any reason, You may return Your policy to Red Sky Travel Insurance within 14 days after receipt. Your premium will be refunded, provided You have not already departed on the Trip or filed a claim. When so returned, all coverages under the policy are cancelled from the beginning.

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss. No legal action for a claim can be brought against

Us more than 3 years after the time required for giving proof of loss. This 3 year time period is extended from the date proof of loss is filed and the date the claim is denied in whole or in part.

Any post-judgment interest for a claim brought against Us will be paid outside the policy limits and in accordance with Maine law.

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be denied and/or cancelled, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or misrepresented.

Under **Section VI – General Provisions,** the following provisions have been added to the policy:

**Cancellation:** We may not cancel this policy except for one or more of the following reasons:

a) nonpayment of premium;
b) fraud or material misrepresentations made by or with Your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;
c) substantial change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including but not limited to, an increase in exposure due to rules, legislation or court decision;
d) failure to comply with reasonable loss control recommendations;
e) substantial breach of contractual duties, conditions or warranties; or

The Maine Insurance Code requires that the foregoing cancellation provisions appear in all casualty insurance policies. Notwithstanding the above, this policy is non-cancellable by either party.

**Nonrenewable:** This is a nonrenewable policy.

**Maryland Residents**
**Form #:** 05 LTP0041 21 10 13

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be cancelled, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or misrepresented.

**Minnesota Residents**
**Form #** 05 LTP0041 24 11 13

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be void, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or misrepresented, with the intent to deceive and defraud.

**Mississippi Residents**
**Form #:** 05 LTP0041 25 10 13

The following provision on Page 1 of the policy has been deleted and replaced as follows:

This policy describes the travel insurance benefits underwritten by Arch Insurance Company, herein referred to as the "Company" or as "We", "Us" and "Our". No change to this policy shall be valid unless approved by the Company and no agent has authority to change the policy or waive any of its provisions. Please refer to the Schedule of Benefits shown on the Declarations, Schedule of Benefits or Confirmation of Benefits, which provides the Insured, also referred to as "You" or "Your", with specific information about the program You purchased.

Under **Section V – Claims Provisions, Proof of Loss** is deleted and replaced as follows:

**Proof of Loss:** A detailed proof of loss must be provided within 90 days after the date of the loss or as soon as is reasonably possible. Failure to furnish such written proof within the time required shall not invalidate nor reduce any claim. Proof must, however, be furnished no later than 12 months from the time it is otherwise required, except in the absence of legal capacity.

Under **Section V – Claims Provisions, Payment of Claims** is deleted and replaced as follows:

**Payment of Claims**: We or Our designated representative, will pay a claim after receipt of acceptable proof of loss within twenty-five (25) days for claims submitted electronically and thirty-five (35) days for claims submitted in a format other than electronic. If payment is not made in these timeframes for all or portion(s) of a submitted claim, We will provide the claimant with the reason(s) why the claim is not payable or the additional information necessary to process the balance of the claim. Once the claimant provides Us with any additional information requested, the balance of the claim will then be paid within twenty (20) days of receipt by Us of the requested additional satisfactory documentation. If a claim is not denied by Us for valid reasons within the above stated timeframes or payment is not made within these timeframes, interest shall accrue on the portion of the unpaid claim at the rate of one and one-half percent (1 ½ %) per month from the date payment was due until final claim settlement or adjudication.

Benefits for Loss of life will be paid to Your designated beneficiary. If a beneficiary is not otherwise designated by You, benefits for Loss of life will be paid to the first of the following surviving preference beneficiaries:
a) Your spouse;
b) Your child or children jointly;
c) Your parents jointly if both are living or the surviving parent if only one survives;
d) Your brothers and sisters jointly; or
e) Your estate.

All other benefits will be paid directly to You, unless otherwise directed. Any accrued benefits unpaid at Your death will be paid to Your estate. If You have assigned Your benefits, we will honor the assignment if a signed copy has been filed with us. We are not responsible for the validity of any assignment.

All or a portion of all benefits provided by the policy may, at Our option, be paid directly to the provider of the service(s) to You. All benefits not paid to the provider will be paid to You.

If Your age has been misstated, all amounts payable under this policy shall be what the actual premium paid would have purchased at the correct age.

If any benefit is payable to: (a) an Insured who is a minor or otherwise not able to give a valid release; or (b) Your estate, We may pay any amount due under the policy to Your beneficiary or any relative whom We find entitled to the payment. Any payment made in good faith shall fully discharge Us to any party to the extent of such payment.

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be void, if before, during or after a loss, any material fact or circumstance relating to this insurance has been fraudulently concealed or misrepresented.

**Missouri Residents**
**Form #:** 05 LTP0041 26 12 13

Under **Section III – Policy Limitations and Exclusions**, the following exclusion is deleted and replaced as follows:

2. suicide, attempted suicide or any intentionally self-inflicted injury of You, a Traveling Companion, Family Member or Business Partner booked to travel with You, while sane;

Under **Section V – Claims Provisions, Notice of Claims** is deleted and replaced as follows:

**Notice of Claim:** Notice of claim must be reported to Us within 30 days after a loss occurs or as soon as is reasonably possible. You or someone on Your behalf may give the notice. The notice should be given to Us or Our designated representative and should include sufficient information to identify You. However, no claim will be denied based upon Your failure to provide notice within such specified time, unless the failure operates to prejudice the rights of the Company, as per Missouri regulation 20CSR100-1.020.

Under **Section V – Claims Provisions, Proof of Loss** is deleted and replaced as follows:

**Proof of Loss:** You must furnish the Company, or its designated representative, with proof of loss. This must be a detailed statement. It must be filed with the Company or its designated representative within ninety (90) days from the date of loss and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

Failure to give notice within such time will not invalidate or reduce any valid claim if it is shown not to have been reasonably possible to give such notice and that notice was then given as soon as reasonably possible thereafter.

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss. No legal action for a claim can be brought against Us more than 10 years after the time required for giving proof of loss. This 10 year time period is extended from the date proof of loss is filed and the date the claim is denied in whole or in part.

**Oklahoma Residents**
**Form #:** 05 LTP0041 37 11 13

The "Free Look Period" shown on page 1 is deleted and replaced as follows:

If You are not satisfied for any reason, You may return Your policy to Us within 14 days after receipt. Your premium will be refunded, provided You have not already departed on the Trip or filed a claim. When so returned, all coverages under the policy are cancelled from the beginning.

The following Fraud Warning has been added to page 1 of the policy.

**WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information, is guilty of a felony.**

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be cancelled, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or misrepresented.

**Oregon Residents**
**Form #:** 05 LTP0041 38 06 13

Under **Section I – Coverages,** the following **"Other Covered Events"** is deleted and replaced as follows:
d. You who are **military, police or fire personnel** being called into emergency service to provide aid or relief for a Natural Disaster or a Terrorist Incident;

Under **Section I – Coverages,** the following **"Other Covered Events"** has been added:

i. a Terrorist Incident that occurs within 30 days of Your Scheduled Departure Date in a city listed on the itinerary of Your Trip.

Under **Section II – Definitions, Domestic Partner** is deleted and replaced as follows:

**"Domestic Partner"** means an individual joined in a Domestic Partnership.

Under **Section II – Definition of Domestic Partnership** has been added to the policy:

**"Domestic Partnership"** means a civil contract entered into in person between two individuals of the same sex who are at least 18 years of age, who are otherwise capable and at least one of whom is a resident of Oregon.

Under **Section II – Definitions,** the following definition has been added:
**"Terrorist Incident"** means an incident deemed a terrorist attack by the United States government or act of violence, other than civil disorder or riot (that is not an act of war, declared or undeclared), that results in Loss of life or major damage to person or property, by any person acting on behalf of or in connection with any organization which is generally recognized as having the intent to overthrow or influence the control of any government. Terrorist Incident does not mean an incident that occurs in a foreign

location on the U.S. State Department's Do Not Travel list.

The following exclusion has been added to **Section III – Policy Limitation and Exclusions:**

9. a Terrorist Incident that occurs in a foreign location on the U.S. State Department's Do Not Travel list.

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted in its entirety.

**South Carolina Residents**
**Form #:** 05 LTP0041 41 07 13

Under **Section V – Claims Provisions, Notice of Claim** is deleted and replaced as follows:

**Notice of Claim:** Notice of claim must be reported to Us within 20 days after a loss occurs or as soon as is reasonably possible. You or someone on Your behalf may give the notice. The notice should be given to Us or Our designated representative and should include Your name and the policy number.

Under **Section V – Claims Provisions, Proof of Loss** is deleted and replaced as follows:

**Proof of Loss:** Proof of loss must be provided within 90 days after the date of the loss or as soon as is reasonably possible. If it was not reasonably possible to give written proof in the time required, We may not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. Proof must, however, be furnished no later than 12 months from the time it is otherwise required, except in the absence of legal capacity.

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive written proof of loss. No legal action for a claim can be brought against Us more than 6 years after the time required for giving written proof of loss. This 6 year time period is extended from the date written proof of loss is filed and the date the claim is denied in whole or in part.

The following provision has been added under **Section VI – General Provisions:**

**Conformity with State Statutes:** Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which You reside, on that date is amended to conform to the minimum requirements of such laws.

**South Dakota Residents**
**Form #:** 05 LTP0041 42 11 13

Under **Section II – Definitions, Domestic Partner** is deleted and replaced as follows:

**"Domestic Partner"** where permitted by law means an opposite or same-sex partner who is at least eighteen (18) years of age and has met all the following requirements for at least 6 months:

1) Resides with You;
2) Shares financial assets and obligations with You;
3) Is not related by blood to You to a degree of closeness that would prohibit a legal marriage;
4) Neither You nor Your Domestic Partner is married to anyone else, or has any other Domestic Partner.

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss. No legal action for a claim can be brought against Us more than 6 years after the time required for giving proof of loss. This 6 year time period is extended from the date proof of loss is filed and the date the claim is denied in whole or in part.

**Tennessee Residents**
**Form #:** 05 LTP0041 43 06 13
The following Company toll free phone number has been added to Page 1 of the policy:

**Arch Insurance Company**
Administrative Office: 300 Plaza Three
Jersey City, NJ 07311
Toll Free Number: 1-866-413-5550

Under **Section II – Definitions,** the following definitions are deleted and replaced as follows:

**"Accident"** means a sudden, unexpected, unintended event that occurs at an identifiable time and place, and shall also include exposure resulting from a mishap to a conveyance in which You are traveling.

**"Sickness"** means an illness or disease of the body that: 1) requires examination and treatment by a Physician, and 2) commences while Your coverage is in effect. An illness or disease of the body that manifests itself and then worsens or becomes acute prior to the Effective Date of Your coverage is not a Sickness as defined herein and is not covered by the policy.

Under **Section V – Claims Provisions, Proof of Loss** is deleted and replaced as follows:

**Proof of Loss:** Proof of loss must be provided within 90 days after the date of the loss or as soon as is reasonably possible. Failure to furnish proof of loss within the time required shall not invalidate or reduce any claim if it was not reasonably possible to give proof of loss within such time. Proof must, however, be furnished no later than 12 months from the time it is otherwise required, except in the absence of legal capacity.

**Section V – Claims Provisions, Payment of Claims** is deleted and replaced as follows:

**Payment of Claims:** Benefits for Loss of life will be paid to Your designated beneficiary. If a beneficiary is not otherwise designated by You, benefits for Loss of life will be paid to the first of the following surviving preference beneficiaries:

a) Your spouse;
b) Your child or children jointly;
c) Your parents jointly if both are living or the surviving parent if only one survives;
d) Your brothers and sisters jointly; or
e) Your estate.
All other benefits will be paid directly to You, unless otherwise directed. Any accrued benefits unpaid at Your death will be paid to Your estate. If You have assigned Your benefits, we will honor the assignment if a

signed copy has been filed with us. We are not responsible for the validity of any assignment. Payment of claims to a minor will be limited to $1,000 for Loss of life benefits.

All or a portion of all benefits provided by the policy may, at Our option, be paid directly to the provider of the service(s) to You. All benefits not paid to the provider will be paid to You.

If any benefit is payable to: (a) an Insured who is a minor or otherwise not able to give a valid release; or (b) Your estate, We may pay any amount due under the policy to Your beneficiary or any relative whom We find entitled to the payment. Any payment made in good faith shall fully discharge Us to any party to the extent of such payment.

**Texas Residents**
**Form #s:** 05 LTP0041 44A 08 13 &
05 LTP0041 44B 10 13

Under **Section IV- Coverage Provisions, When Coverage Ends**, the following provision has been added:

Coverage will not end solely because a person becomes an elected official.

Under **Section V – Claims Provisions, Notice of Claim** is deleted and replaced as follows:

**Notice of Claim:** Notice of claim must be reported to Us within 30 days after a loss occurs or as soon as is reasonably possible. You or someone on Your behalf may give the notice. The notice should be given to Us or Our designated representative and should include sufficient information to identify You.

No later than the 15th day after receipt of such notice of a claim, We will: a) acknowledge receipt of the claim; b) commence any investigation of the claim; and c) request from You all items, statements, and forms that We reasonably believe, at that time, will be required from You. Additional requests may be made if during the investigation of the claim such additional requests are necessary. If acknowledgement of the claim is not made in writing, We will make a record of the date, means, and content of the acknowledgement.

Under **Section V – Claims Provisions, Claim Acceptance or Rejection** provision has been added:

**Claim Acceptance or Rejection:** We will notify You in writing, of the acceptance or rejection of the claim no later than the 15th Business Day after the date We receive all items, statements, and forms required by Us, in order to secure final proof of loss. If We reject the claim, We will inform You of the reasons for the rejection. If We are unable to accept or reject the claim within 15 Business Days after the date We receive all items, statements, and forms required by Us, We will notify You within such 15 Business Day period. The notice provided will give the reasons why We need additional time. No later than the 45th day after the date We notify You of the need for additional time to investigate a claim, We will accept or reject the claim.

"Business Day" means a day other than a Saturday, Sunday, or holiday recognized by the State.

Under **Section V – Claims Provisions, Payment of Claims** is deleted and replaced as follows:

**Payment of Claims:** All other benefits will be paid directly to You, unless otherwise directed. Any accrued benefits unpaid at Your death will be paid to Your estate. If You have assigned Your benefits, we will honor the assignment if a signed copy has been filed with us. We are not responsible for the validity of any assignment.

All or a portion of all benefits provided by the policy may, at Our option, be paid directly to the provider of the service(s) to You. All benefits not paid to the provider will be paid to You.

If any benefit is payable to: (a) an Insured who is a minor or otherwise not able to give a valid release; or (b) Your estate, We may pay any amount due under the policy to Your beneficiary or any relative whom We find entitled to the payment. Any payment made in good faith shall fully discharge Us to any party to the extent of such payment.

If We notify You that We will pay a claim or part of a claim, We will pay the claim no later than the fifth Business Day after the notice

has been made. If payment of the claim or part of the claim is conditioned on the performance of an act by You, We will pay the claim not later than the fifth Business Day after the date the act is performed.

Under **Section V – Claims Provisions,** the following provision has been added:

In the event of a weather-related catastrophe or major Natural Disaster, as defined by the commissioner, the claim handling deadlines imposed under Section V – Claims Provisions are extended for an additional 15 days.

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us more than two years and one day after the loss starting from the date the claim is denied in whole or in part.

Under **Section VI – General Provisions,** the following provisions have been added to the policy:

**Cancellation:** This policy may not be cancelled based solely on the fact that the You are an elected official. If the policy has been in effect for 60 days or less, We may cancel for any reason. If the policy has been in effect for more than 60 days, We may cancel for the following reasons:

a) nonpayment of premium;
b) fraud in obtaining coverage under this policy;
c) an increase in hazard within Your control which would produce an increase in the rate;
d) loss of Our reinsurance covering all or part of the risk covered by this policy; or
e) We are placed in supervision, conservatorship, or receivership, if the cancellation is approved or directed by the supervisor, conservator or receiver.

We shall mail or deliver written notice of cancellation to You at the address shown in the Declarations, Schedule of Benefits or Confirmation of Benefits at least 10 days prior to the effective date of cancellation. The mailing of such notice shall be sufficient notice of cancellation.

**Nonrenewable**: This is a nonrenewable policy.

**Utah Residents**
**Form #:** 05 LTP0041 45 10 13

The "Free Look Period" shown on page 1 is deleted and replaced as follows:

If You are not satisfied for any reason, You may return Your policy to Red Sky Travel Insurance within 30 days after receipt. Your premium will be refunded, provided You have not already departed on the Trip or filed a claim. When so returned, all coverages under the policy are void from the beginning.

The following provision is added to **Section IV, Coverage Provisions:**

**Dispute Resolution** Any matter in dispute between You and Us may be subject to arbitration as an alternative to court action pursuant to the Federal Rules of Civil Procedure, a copy of which is available on request from Us. Any decision reached by arbitration shall be binding upon both You and Us, The arbitration award may include attorney's fees if allowed by state law and may be entered as a judgment in any court of proper jurisdiction.

Under **Section V – Claims Provisions, Proof of Loss** is deleted and replaced as follows:

**Proof of Loss**: Proof of loss must be provided within 90 days after the date of the loss or as soon as is reasonably possible. Failure to give notice or file proof of loss as required does not bar recovery under the policy if We fail to show We were prejudiced by the failure.

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be cancelled, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or misrepresented.

**Virginia Residents**
**Form #:** 05 LTP0041 47 12 13

Under **Section VI – General Provisions,** the following provisions have been added:

**Bankruptcy and Insolvency:** Your insolvency or bankruptcy, or the insolvency of Your estate, shall not relieve Us of any of Our obligations under this policy. Any party who has obtained a judgment against You, which is returned unsatisfied, may bring an action against Us to recover damages insured by the policy.

**Cancellation:** After 14 days of Your receipt of this policy, this policy cannot be cancelled by You or Us.

**Wyoming Residents**
**Form #:** 05 LTP0041 51 11 13

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss. No legal action for a claim can be brought against Us more than 4 years after the loss. This 4 year time period is extended from the date proof of loss is filed and the date the claim is denied in whole or in part.